**THE ROSEN LAW FIRM, P.A.**
Jacob A. Goldberg (*pro hac vice*)
Gonen Haklay (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

*Lead Counsel for Lead Plaintiff*
*Named Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: FORCEFIELD ENERGY INC. SECURITIES LITIGATION | Case No.: 15 Civ. 3020 (NRB) |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

I.    **INTRODUCTION** ................................................................................................ 1

II.    **PROCEDURAL HISTORY** ............................................................................ 3

III.    **ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS** ..................... 7

    **A.** **Numerosity** ................................................................................................ 8
    **B.** **Commonality** ............................................................................................ 8
    **C.** **Typicality** ................................................................................................ 9
    **D.** **Adequacy** .............................................................................................. 10

        **(i)** **Adequacy of the Proposed Class Representatives** .................................. 10
        **(ii)** **Rule 23(g) Adequacy of the Proposed Class Counsel** ............................ 11

    **E.** **Common Questions Predominate and the Class Is Superior to Other  Methods of Adjudication** ................................................................................ 11

IV.    **THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL** ................................................. 14

    **A.** **Standards for Preliminary Approval** ........................................................ 14
    **B.** **Preliminary Fairness Review** .................................................................. 15

        **(i)** **The Negotiations Were Fair and Conducted at Arm's-Length** .............. 15
        **(ii)** **Lead Counsel and Settling Defendants' Counsel Are Highly Experienced and Capable** .............................................................................. 16
        **(iii)** **The Settlement Avoids Substantial Risks in this Litigation** ............... 17
        **(iv)** **The Settlement Falls within the Range of Possible Approval** ............ 18

V.    **THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE  23(C)(2)(B)** .................................................................................................... 19

VI.    **PROPOSED SCHEDULE OF EVENTS** ........................................................ 21

VII.    **CONCLUSION** ........................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ......................................................................................................... 7, 13

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975)................................................................................................ 8

*Brown v. Steinberg,*
  No. 84 CIV. 4654 (CMB), 1990 WL 145151 (S.D.N.Y. Sept. 22, 1990)............................... 16

*Bussie v. Allmerica Fin. Corp.,*
  50 F. Supp. 2d 59 (D. Mass. 1999) ..................................................................................... 16

*Consol. Edison, Inc. v. Ne. Utilities,*
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)................................................................................... 20

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995).................................................................................................... 8

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
  183 F.3d 1 (1st Cir. 1999) ................................................................................................... 14

*Durrett v. Hous. Auth. of City of Providence,*
  896 F.2d 600 (1st Cir. 1990) ............................................................................................... 14

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)............................................................................................................ 21

*Fogarazzao v. Lehman Bros.,*
  232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................................... 11

*Fogarazzo v. Lehman Bros.,*
  263 F.R.D. 90 (S.D.N.Y. 2009).............................................................................................. 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  903 F.2d 176 (2d Cir. 1990)................................................................................................. 10

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968).................................................................................................. 9

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................. 19

*In re Deutsche Telekom Ag Sec. Litig.*,
   229 F. Supp. 2d 277 (S.D.N.Y. 2002) ............................................................... 9, 12

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 CIV. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ....................... 9

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............ 8, 9, 10

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009) ........................................................................ 10

*In Re Med. X-ray Film Antitrust Litig.*,
   No. CV-93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ......................... 15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................... 15, 18, 19

*In re Priceline.com Inc.*,
   236 F.R.D. 89 (D. Conn. 2006) ........................................................................... 12

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................ 19

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................... 8, 9

*Karvaly v. eBay, Inc.*, 245 F.R.D. 71 (E.D.N.Y. 2007) ......................................... 15

*Krangel v. Golden Rule Res., Ltd.*,
   194 F.R.D. 501 (E.D. Pa. 2000) .......................................................................... 21

*Leung v. Home Boy Rest. Inc.*,
   No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................. 16

*Lyons v. Marrud, Inc.*,
   No. 66 CIV. 415, 1972 WL 327 (S.D.N.Y. June 6, 1972) ..................................... 16

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................................... 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ........................................................................................................ 21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................................................ 8

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................................... 20

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ..................................................................................... 12, 13

*Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*,
    No. 01 CIV. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ................................ 9

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ...................................................................................... 17

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ................................................................................... 19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................................... 16, 20

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...................................................................................................... 20

15 U.S.C. §78u-4(a)(4) ...................................................................................................... 19

28 U.S.C. § 1391(d) ......................................................................................................... 13

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................................................... 7

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 7, 12, 13

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Beverly Brewer ("Lead Plaintiff") and named Plaintiffs Nipul Patel and Edward Huang ("Named Plaintiffs" and, together with Lead Plaintiff, "Plaintiffs"), individually and on behalf of all other persons similarly situated, respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and in support of the Stipulation and Agreement of Settlement dated July 26, 2017 (the "Stipulation"), filed with the Court herewith.[1]

## I.    INTRODUCTION

Plaintiffs and Defendants ForceField Energy, Inc. ("ForceField" or the "Company"), David Natan, and Jason Williams (collectively, the "ForceField Defendants") have agreed to settle this case for three hundred fifty six thousand U.S. dollars ($356,000), as well as a contingent "Additional Settlement Amount" of up to one hundred thirty one thousand six hundred thirty six U.S. dollars ($131,636), to be paid, if applicable, by June 30, 2020, at the latest.  Plaintiffs have further previously agreed to a settlement of thirty thousand U.S. dollars ($30,000) with Defendants DreamTeamGroup and MissionIR (the "DTG Defendants"), and a settlement of twenty eight thousand five hundred U.S. dollars ($28,500) with Defendants Robert Goldman and Goldman Small Cap Research (the "GSCR Defendants"), which monies have been deposited in an escrow account.  The total settlement, exclusive of the contingent Additional Settlement Amount, is four hundred fourteen thousand five hundred U.S. dollars ($414,500).

---

[1] Unless otherwise defined, all terms set forth herein shall have the same meaning as the terms in the Stipulation.

By this motion, Lead Plaintiffs respectfully request the Court take the first step in the approval process[2] and enter an order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying, for settlement purposes only, the proposed Settlement Class; (iii) approving the Parties' proposed form and method of giving notice to the proposed Settlement Class; and (iv) setting a date for a Settlement Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Lead Plaintiffs' motion for Final Approval of the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses.

The proposed Settlement was achieved following arm's-length negotiation and based on, *inter alia*, Plaintiffs' intensive investigation in connection with preparing four complaints and defeating Defendants' motion to dismiss; consultation with experts to evaluate potential damages; and review of documents filed in governmental investigations. Lead Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action, including the potential limitations on damages and recovery, prior to agreeing to accept the proposed Settlement.[3]

The proposed Settlement represents an excellent recovery for Settlement Class Members. Lead Plaintiffs estimate that the proposed Settlement, exclusive of the Additional Settlement Amount, returns 2.2% of estimated damages – in line with the median settlement for similar

---

[2] Court approval of a class settlement is a two-step process. First, the Court must preliminarily approve the settlement, as well as the content and method of providing notice to the proposed settlement class. Second, after notice has been issued to settlement class members, the Court must make a final determination as to whether the Settlement is fair, reasonable and adequate, such that it should be finally approved.

[3] The Forcefield Defendants have represented that they do not possess personal assets sufficient to fund the Settlement, and Defendants Natan and Williams have agreed to provide Affidavits on their own behalves, attaching tax returns, and an Affidavit on behalf of ForceField, attaching a financial statement, in support of the representations.

securities class actions.  See, e.g., Cornerstone Research, Securities Class Action Settlement 2013 Review and Analysis, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million).  Including the Additional Settlement Amount and assuming it remains at its current level, the proposed Settlement returns 3% of estimated damages, above the median settlement for similar securities class actions. Thus, the Settlement easily falls "within the range of possible approval" and warrants preliminary approval.   Likewise, the proposed Notice satisfies the PSLRA's disclosure requirements and is the best practicable notice under the circumstances.

Court approval of a class settlement is a two-step process. First, the Court must preliminarily approve the settlement, including determining that the case may proceed as a class action, approve the form, content, and means of notifying the preliminarily certified Settlement Class of the existence and terms of the Settlement, set deadlines for dissemination and publication of the Notice, for Settlement Class Members to either opt-out of the Settlement Class, object to the terms of the Settlement, and/or file their Proof of Claim. Lastly, the Court must set a date for the Settlement Hearing to determine whether it will give final approval to the Settlement as fair, reasonable, and adequate. Second, after notice has been issued to settlement class members, the Court must make a final determination as to whether the Settlement is fair, reasonable and adequate, such that it should be finally approved.

At this stage the Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members and Lead Plaintiffs' and Settling Defendants' Counsel shall be heard on the matter.

## II.    PROCEDURAL HISTORY

This Action was commenced on April 17, 2015 in this court with the filing of the class action complaint styled *Lori Atkinson v. ForceField Energy Inc., et al.*, 15-cv-3020, alleging

violations of federal securities laws by the Defendants (the "Atkinson Action") (Dkt. No. 1).

Two additional related actions were filed in this court: on April 21, 2015, *Hannah Miller v. ForceField Energy Inc*., et al., 1:15- cv-03141 (the "Miller Action"), and on April 27, 2015, *Dean Rosales, et al., v. ForceField Energy Inc*., et al., 15-cv-3279 (the "Rosales Action").

By Order dated July 22, 2015, the Court consolidated the Atkinson Action, Miller Action, and the Rosales Action under the caption *In re ForceField Energy, Inc. Securities Litigation* and master file Case No. 15-cv-30250 (the "Consolidated Action"), appointed Beverly Brewer as Lead Plaintiff, and approved her selection of The Rosen Law Firm, P.A. as interim Lead Counsel (Dkt. No. 37).[4]

On August 21, 2015, Plaintiffs filed the Consolidated Amended Complaint For Violations of the Federal Securities Laws ("FAC") alleging: (Count 1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder against Defendants; and (Count 2) violation of Section 20(a) of the Exchange Act against ForceField Energy, Inc., David Natan, and Jason Williams (the "ForceField Defendants"), and against Defendant Richard St. Julien (Dkt. No. 40).

Following a conference held on October 6, 2015 to discuss the ForceField Defendants' anticipated motion to dismiss, Plaintiffs filed the Consolidated Second Amended Complaint For Violation of the Federal Securities Laws ("SAC") on November 2, 2015 (Dkt. No. 65).

On December 4, 2015, the ForceField Defendants filed a motion to dismiss the SAC (Dkt. No. 83), as did the DTG Defendants (Dkt. No. 82).[5]

---

[4] On June 26, 2015, an action was commenced in front of the U.S. Judicial Panel on Multidistrict Litigation ("MDL"), Case No. 15-MD-2655, on a request to transfer the Actions to the U.S. Eastern District of New York. The transfer request was denied on October 15, 2015. The Court's July 22, 2015 Order directed Lead Plaintiff Brewer to inform the Judicial Panel on MDL of this order.

[5] Following deficiency notices, these motions were re-filed as Dkt. Nos. 84 and 89, respectively.

4

After a telephonic pre-motion conference held on May 12, 2016, the Court granted Plaintiffs' request for leave to amend on May 16, 2016 (Dkt. No. 112). On May 23, 2016 Plaintiffs filed the operative Consolidated Third Amended Complaint For Violation of the Federal Securities Laws ("TAC") (Dkt. No. 113).

On April 8, 2016, counsel for the GSCR Defendants notified the Court that Plaintiffs and the GSCR Defendants had reached a settlement and were in the process of executing a Memorandum of Understanding (Dkt. No. 107). On May 20, 2016, Plaintiffs and the GSCR Defendants executed a Memorandum of Understanding ("GSCR MOU") to settle the claims against the GSCR Defendants.

On June 27, 2016, the DTG Defendants and the ForceField Defendants filed motions to dismiss the TAC (Dkt. Nos. 143, 144). On March 29, 2017, the Court issued an order and opinion granting in part and denying in part the ForceField Defendants' motion to dismiss the TAC (Dkt. No. 225). On May 12, 2017, the ForceField Defendants filed their Answers (Dkt. Nos. 230 – 232).

On March 1, 2017, counsel for the DTG Defendants notified the Court that Plaintiffs and the DTG Defendants had reached a settlement and were in the process of executing a Memorandum of Understanding ("DTG MOU") (Dkt. No. 219). On April 4, 2017, the Court granted Plaintiffs' Notice of Voluntary Dismissal With Prejudice as to the DTG Defendants and GSCR Defendants (Dkt. No. 227).

**Derivative Action**

The derivative action *Neil J. Brown v. ForceField Energy, Inc., et al.,* Case No. 15-cv-02782 (the "Derivative Action"), was filed on May 13, 2015 in the U.S. District Court for the Eastern District of New York on behalf of ForceField against Defendants Richard St. Julien, David Natan, Jason Williams and ForceField directors David Venderhorst, Adrian Auman, and Kebir

Ratnani, alleging breaches of fiduciary duty related to the claims in the Consolidated Securities Class Action.[6]

**Settlement Discussions**

Lead Counsel and Counsel for Settling Defendants reached the Settlement after extensive negotiations. As detailed *supra*, this Settlement was reached in three stages. Plaintiffs reached a settlement and executed the GSCR MOU on May 20, 2016. As directed by the GSCR MOU, as settlement consideration the GSCR Defendants deposited $28,500 into an escrow account.

On March 6, 2017, Plaintiffs and the DTG Defendants executed the DTG MOU. As directed by the DTG MOU, as settlement consideration the DTG Defendants deposited $30,000 into an escrow account

The terms of the settlement between Plaintiffs and the ForceField Defendants are laid out in the Stipulation.

Prior to executing the DTG Defendants' MOU, the GSCR Defendants' MOU, and agreeing in principle to settle the claims against the ForceField Defendants, Lead Counsel conducted an investigation relating to the claims and the underlying events and transactions alleged in the Action. This process included reviewing and analyzing: (i) documents filed publicly by ForceField with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Defendants; (iii) input of information and advice by Plaintiffs; and (iv) the applicable law governing the claims and potential defenses. Especially given the precarious nature and financial position of Settling Defendants, this analysis, in the Plaintiffs' judgment, has provided an adequate and satisfactory basis for the evaluation of an agreement to

---

[6] Another derivative action, *Su v. St. Julien, et al.,* Case No. 15-cv-4174 in the S.D.N.Y., was filed on May 29, 2015 and was subsequently voluntarily dismissed on July 13, 2015.

settle, as described herein;

### III.   ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

Plaintiffs purchased ForceField common stock during the period from August 20, 2013 through and including April 20, 2015 (the "Class Period"). This Litigation involves whether Settling Defendants violated the federal securities laws by making false and misleading statements to the investing public during the Class Period as set out in the TAC, including whether Defendants: (1) purchased ForceField stock in order to manipulate its price and trading volume; (2) authorized undisclosed, paid promotions touting ForceField's stock; (3) paid kickbacks to brokers and others to solicit investors in ForceField's private placements; and (4) improperly prevented TPE shareholders from selling ForceField stock.

In preliminarily approving the proposed Settlement, this Court should first consider whether to conditionally certify the Settlement Class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Federal Rule of Civil Procedure 23 ("Rule 23")).

Rule 23 governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In support of

their contention that proper and sufficient grounds to conditionally certify the class exist under Rule 23(a) and 23(b)(3), Plaintiffs demonstrate the following:

### A.        Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). In this case, although the exact size of the Settlement Class is not yet known, there are likely hundreds, if not thousands, of members in the proposed class. Thus, the numerosity requirement is met.

### B.        Commonality

The commonality element of Rule 23(a)(2) requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177 at *13. In a securities class action like this one the commonality requirement "is applied permissively." *Id.* Commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968);

*see also In re Dynex Capital, Inc. Sec. Litig.*, No. 05 CIV. 1897 HB, 2011 WL 781215, at *2 (S.D.N.Y. Mar. 7, 2011) ("Class certification will not necessarily be precluded by differing individual circumstances of class members"); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members"). The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. This requirement is easily met in most cases. *Newberg on Class Actions* § 3.10 (4th).

Where, as here, there are common questions of law and fact pertaining to whether a false statement of material fact were made, whether the statements were made with the requisite state of mind, and what is the proper measure of damages, commonality is easily met. *See, e.g.*, *Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*, No. 01 CIV. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004) (commonality is satisfied when it is alleged that class members have been injured by the same fraudulent scheme). The commonality element is met.

### C.    Typicality

Pursuant to Rule 23(a)(3), a representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177 at *13; *see also In re Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). As with the commonality requirement, the typicality requirement is not demanding. *In re Dynex Capital, Inc. Sec. Litig.*, 2011 WL 781215, at *2; *see also In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 627 (N.D. Ala. 2009) ("Typicality generally presents a low burden that is easily satisfied").

9

The typicality requirement is met if Plaintiffs and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs are the proposed class representatives in this Litigation. Exactly as was the case with all other members of the proposed class during the Settlement Class period, Plaintiffs purchased ForceField common stock during the Class Period from August 20, 2013 through and including April 20, 2015, based on Defendants' allegedly materially false and misleading statements and schemes.  The typicality requirement is satisfied.

### D.     Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first the moving party must show that the interests of the representative parties will not conflict with the interests of the class members, and second, that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *EVCI*, 2007 WL 2230177 at *13. The requirement of adequacy "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). Pursuant to Rule 23(g), adequacy of class counsel is now considered separately from the determination of the adequacy of the class representatives. Both prongs of the adequacy requirement are satisfied here.

### (i)     Adequacy of the Proposed Class Representatives

The proposed Settlement Class representatives purchased ForceField common stock during the Class Period, and have no interests antagonistic to those of the members of the proposed

Settlement Class. The proposed representatives seek to recover from Settling Defendants, on their own behalf and on behalf of all members of the Settlement Class, damages caused by Settling Defendants' unlawful conduct. The representatives' interests are therefore congruent with and not antagonistic to other Settlement Class Members' interests.

### (ii)     Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005). Lead Counsel has researched, drafted and filed four complaints, successfully defeated a motion to dismiss, and achieved settlements with three separate groups of defendants in this Action.

Lead Counsel is experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted class actions in courts throughout the country. Courts have consistently found Lead Counsel, The Rosen Law Firm, P.A., to be well suited as class counsel in stockholder class actions. The resume of The Rosen Law Firm, P.A. has previously been submitted (Dkt. No. 7-4). Thus, Lead Counsel satisfies Rule 23(g)'s adequacy requirement.

### E.     Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). The Court must find that:

> questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action

> is superior to other available methods for the fair and efficient adjudication
> of the controversy.

Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

In determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. "Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). When common questions represent a significant aspect of a case and can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. Rule 23(b)(3) is satisfied in the "quintessential securities fraud class action because there exists "[a]n enormous group of potential plaintiffs" seeking to recover damages and "[t]he focus of this litigation is upon the propriety defendants' conduct" and "defendants' potential liability." *In re Priceline.com Inc.*, 236 F.R.D. 89, 101–02 (D. Conn. 2006); *see also In re Deutsche Telekom*, 229 F. Supp. 2d at 282 ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws"). This Action is the "quintessential securities fraud class action."

In the instant Litigation, common questions predominate over individual issues. If every Settlement Class Member brought an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. This case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

(a)     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b)     the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(c)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)     the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. The Southern District of New York is an appropriate forum because pursuant to 28 U.S.C. § 1391(d), ForceField may be properly sued in any district court in the United States; moreover during the Settlement Class Period ForceField's common stock traded on the NASDAQ (symbol FNRG), which is located in this district. Additionally, as to Rule 23(b)(3)(D), Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

In terms of fairness and efficiency, this Court should balance the merits of certifying a class against other possible methods of adjudication. Absent a class action, this Court would be faced with the task of potentially litigating numerous lawsuits. *See also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of … groups of people whose individual claims would be too small to warrant litigation").

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Settling Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). This Court should conditionally certify the Settlement Class for settlement purposes only.

IV.    **THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

     **A.    Standards for Preliminary Approval**

Pursuant to Rule 23(e), because this Litigation is styled as a class action, the Settlement must ultimately be approved by the Court. Preliminary approval of the Settlement is the first step that must be taken before the Court can consider final approval of the Settlement. *See* 4 H. Newberg & A. Conte, *Newberg on Class Action* (4th ed. 2002) at ¶11.25, p. 38. Preliminary approval is merely the prerequisite to giving notice of the proposed settlement to members of the prospective Class for their acceptance or rejection, and does not require this Court to make an ultimate determination of whether the Settlement is fair, reasonable, and adequate.

In preliminarily approving the Settlement, this Court must satisfy itself that the Litigation may proceed as a class action. As demonstrated above, the Settlement Class should be preliminarily certified for the purpose of settlement.

The Court must approve the form, content, and means of notifying the preliminarily certified Class of the existence of the Litigation and of the terms of the proposed Settlement. The Court must set deadlines for Lead Counsel to disseminate and/or publish the Notice, for class members to opt-out of the Settlement Class, for class members to object to the terms of the Settlement, and/or for class members to file claims. Lastly, the Court must set a date for the final Settlement Hearing to determine whether it will grant final approval of the Settlement as fair, reasonable, and adequate. *See Manual for Complex Litigation* (Fourth), § 21.632 (2004); *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).

An ultimate determination of whether the Settlement is fair, reasonable, and adequate need not be reached until Notice of the Settlement has been given to the members of the Settlement

Class and they have been given an opportunity to voice their views of the Settlement, or to exclude themselves from the Settlement Class. *See* 5 James Wm. Moore, *Moore's Federal Practice* ¶¶23.83[1], 23-336.2 to 23-339 (3d ed. 2002); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (At the preliminary approval stage, the court must only determine whether "[t]he settlements are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."). Therefore, if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval, preliminary approval" should be granted. *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("Preliminary approval of settlements should be given if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees") (quoting *In Re Med. X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997)).

The proposed Settlement falls within the reasonable range of possible final approval, and the Settlement should be preliminarily approved.

### B.      Preliminary Fairness Review

### (i)      The Negotiations Were Fair and Conducted at Arm's-Length

A presumption of fairness applies to a proposed class settlement that is the result of arm's length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval

is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (Settlement negotiations between experienced counsel are presumed to be fair and not a product of collusion); *Brown v. Steinberg*, No. 84 CIV. 4654 (CMB), 1990 WL 145151, at *3 (S.D.N.Y. Sept. 22, 1990) (same). Lead Counsel here is experienced, specializing in prosecuting securities class actions.

Here the proposed Settlement for Four Hundred Fourteen Thousand Five Hundred Dollars ($414,500), plus whatever remains in the Additional Settlement Amount when conditions precedent to its distribution are met, is the product of extensive negotiations spanning several months. Lead Counsel evaluated the strengths of the case as assessed the likelihood of recovery down the road. The Settlement, reached after informed negotiations between Lead Counsel and Defense Counsel, was fair and not a product of fraud, collusion, or abandonment of the interests of the Class. These factors further support approval of the Settlement.

### (ii)   Lead Counsel and Settling Defendants' Counsel Are Highly Experienced and Capable

The proponents of Settlement are highly experienced in this type of litigation. As held by the court in *Lyons v. Marrud, Inc.*, No. 66 CIV. 415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case." "A strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

Lead Counsel conducted a thorough investigation of Plaintiffs' claims and carefully considered the risks and benefits of settlement at this juncture of the Action. Although Lead

Counsel believes that Plaintiffs' claims are strong and would be meritorious if the Action were to proceed, it is more than likely that Plaintiffs and the Class would not be able to collect any recovery later, even if Plaintiffs were successful at trial, considering the financial position of ForceField and the other Defendants. Bearing this in mind, the very real risks of zero recovery if the case were to proceed strongly supports the Settlement being reached at this stage of the litigation. Accordingly, Lead Counsel believes this is an excellent result for the Settlement Class.

As discussed above, Lead Counsel is a firm with a strong reputation in the field of complex class actions and has successfully prosecuted and settled numerous cases throughout the country. Settling Defendants' are represented by Gusrae Kaplan Nusbaum PLLC, Dickson Wright PLLC, and The Law Offices of William S. Heyman, firms with substantial experience litigating class actions.

### (iii)    The Settlement Avoids Substantial Risks in this Litigation

This Settlement is an excellent recovery for ForceField shareholders, especially when considering the substantial risks of continued litigation. Securities cases in general are risky to undertake given the PSLRA's heightened pleading standards and discovery stay, but this action in particular imposed great risk as it was very likely that Settling Defendants would not personally be able to pay a large amount after trial, and almost certain that all relevant insurance policies would have been wasted long before the parties ever reached trial, much less after trial. Accordingly, Plaintiffs believed that this Settlement represents an excellent recovery considering the very possible risk of Settling Defendants' inability to pay a judgment.

If the Settlement was not reached, the parties would have to incur substantial costs and engage in prolonged litigation through summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and

could be in the several hundred thousand dollar range for Plaintiffs, indeed exceed the value left in relevant insurance policies. Reaching this Settlement now guarantees recovery for the Settlement Class, where recovery is unlikely even if Plaintiffs prevail at trial and defeat any appeals. Accordingly, the recovery for the Settlement Class of $414,500 plus, if applicable, the Additional Settlement Amount, is highly favorable.

### (iv)    The Settlement Falls within the Range of Possible Approval

As explained above, the proposed Settlement was reached only after protracted, arm's-length negotiations between the Settling Parties and through consideration of the advantages and disadvantages of continued litigation. Lead Counsel, who has a great deal of experience in prosecution and resolution of complex litigation, has carefully evaluated the merits of this case and the proposed Settlement. Even if the matter were to proceed through trial, Lead Counsel knows from experience that the apparent strength of Plaintiffs' case is no guarantee against a defense verdict. Furthermore, even if a judgment were obtained against Settling Defendants at trial, the recovery might not be greater, and indeed might be less, than the Settlement Amount. Settling Defendants do not have assets sufficient to pay the Settlement Amount, and thus victory following trial would undoubtedly be pyrrhic. The Settlement is a guaranteed benefit to the Settlement Class.

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In all respects, the terms embodied in the Stipulation are customary in nature. Specifically, Plaintiffs' recovery from the Settlement Amount will be determined according to precisely the same formula as the recoveries of other Settlement Class Members, with the exception of any reimbursement to the Plaintiffs of the burden incurred in representing the class and so approved by the Court, as contemplated by 15 U.S.C. §78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not

improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives …").

Additionally, the Settlement does not mandate excessive compensation for Lead Counsel. As set forth in the Notice, Lead Counsel will apply for an award of no more than one-third (33 1/3%) of the gross Settlement Amount,[7] as defined in the Stipulation filed herewith, and for reimbursement of their actual expenses not to exceed twenty-five thousand dollars ($25,000). Plaintiffs will request an Award to Lead Plaintiff in the amount of one thousand U.S. dollars ($1,000). Any award of fees, expenses, and Award to Plaintiffs is subject to Court approval.

## V.   THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e). *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379–80 (S.D.N.Y. 2013). Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable). In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL

---

[7] One third of the $414,500 initial settlement amount is $138,666.  Lead Counsels' exact fee request for the Additional Settlement Amount is one third of an amount that is, at this time, unknown, but will not exceed one third of $131,636, or $43,878, in attorneys' fees.

1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Wal-Mart*, 396 F.3d at 114.

The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7);  *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

Here, the Proposed Order for Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), attached as Exhibit A to the Stipulation, mandates that within twenty-eight (28) days of the Court's order preliminarily approving the Settlement, Lead Counsel shall provide notice to Settlement Class Members through mailing of the proposed Notice to all identifiable Settlement Class Members, substantially in the form annexed as Exhibit A-1 to the Preliminary Approval Order, together with a copy of the Proof of Claim and Release, substantially in the form annexed as Exhibit A-3 to the Preliminary Order.

The proposed Notice provides detailed information concerning (a) the rights of Settlement Class Members, including the manner in which objections could be lodged; (b) the nature, history, and progress of the Litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name.

No later than twenty-three (23) calendar days after the entry of the Preliminary Approval Order, Lead Counsel shall cause the Summary Notice, substantially in the form annexed as Exhibit A-2 to the Preliminary Approval Order, to be published once electronically over the internet by *GlobeNewswire* and in print in *Investor's Business Daily.*

The content of the proposed Settlement and Notices are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). As well, the proposed method of notice described above, specifically mailing and publication, satisfies the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also, Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 505 (E.D. Pa. 2000) ("The mailing of the notice to identifiable class members and major financial institutions and publication of the summary notice in *The Wall Street Journal* and *The Globe and Mail* was the best means practicable to notify class members and, thus, satisfies Rule 23.").

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing | Plaintiffs suggest one hundred (100) calendar days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶6). |
| Mailing of the Notice and Proof of Claim and Release. | No later than twenty-eight (28) calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶12.) |
| Publication of the Summary Notice. | No later than twenty-three (23) calendar days following the entry of the Preliminary |

|  | Approval Order. (Preliminary Approval Order ¶17.) |
|---|---|
| Date for Plaintiffs to file papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than thirty-four (34) calendar days prior to the Settlement Hearing. (Preliminary Order ¶26.) |
| Filing deadline for requests for exclusion. | No later than twenty-one (21) calendar days prior to the Settlement Hearing. (Preliminary Order ¶21.) |
| Filing deadline for objections. | No later than twenty-one (21) calendar days prior to the Settlement Hearing (Preliminary Order ¶23.) |
| Filing deadline for Claim Forms. | No later than seventy (70) calendar days after entry of the Preliminary Approval Order (Preliminary Order ¶19(a)) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶27.) |

This schedule is similar to those used in numerous class action settlements and provides due process for the putative Settlement Class Members with respect to their rights concerning the Settlement.

The Court should schedule the Settlement Hearing at least one-hundred (100) days after entering the Preliminary Approval Order in order for there to be sufficient time for mailing the Notice and Proof of Claim and Release, publishing Summary Notice, filing Proofs of Claim, making requests for exclusion, filing the motion in support of final approval of the Settlement and the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses, making objections, filing the reply in support of final approval, and reviewing the requests for exclusion.

## VII.    CONCLUSION

Counsel for the Settling Parties have reached this Settlement following extensive discussions and arm's-length negations. At this juncture, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable, and adequate. The Court is being asked to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing to consider any views expressed by the putative Class Members, the fairness of the Settlement, and Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses. *Moore*, *supra*, §23.83[1], at 23-336.2 to 23-339. We respectfully submit that the Settlement should be preliminary approved and the proposed order entered.

For all the above-stated reasons, Plaintiffs request that the Court (1) certify the Settlement Class for the purposes of Settlement; (2) preliminarily approve the Settlement under the terms set forth in the Settlement Stipulation; (3) approve the form and manner of Notice; and (4) set a Settlement Hearing date for final approval of the proposed Settlement.


Dated: July 26, 2017                          Respectfully submitted,

                                              **THE ROSEN LAW FIRM, P.A.**


                                              /s/ Gonen Haklay

                                              Jacob A. Goldberg (*pro hac vice*)
                                              Gonen Haklay (*pro hac vice*)
                                              101 Greenwood Avenue, Suite 440
                                              Jenkintown, PA 19046
                                              Telephone: (215) 600-2817
                                              Fax: (212) 202-3827
                                              Email: jgoldberg@rosenlegal.com
                                              Email: ghaklay@rosenlegal.com

                                              ***Lead Counsel for Lead Plaintiff***
                                              ***Named Plaintiffs and the Class***

23

**CERTIFICATE OF SERVICE**

I, Gonen Haklay, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046. I am over the age of eighteen.

On July 26, 2017, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT with** the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on July 26, 2017                    /s/ Gonen Haklay
                                             Gonen Haklay