**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Jacob A. Goldberg (*pro hac vice*)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff*
*Named Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: FORCEFIELD ENERGY INC. SECURITIES LITIGATION | Case No.: 15 Civ. 3020 (NRB) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") dated July 26, 2017, is hereby submitted to the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into among Lead Plaintiff Beverly Brewer ("Lead Plaintiff") and Named Plaintiffs Nipul Patel and Edward Huang ("Named Plaintiffs"), on behalf of themselves and the putative securities class (collectively, "Plaintiffs"); and ForceField Energy, Inc. ("ForceField" or the "Company"), David Natan, and Jason Williams (the "ForceField Defendants"), DreamTeamGroup ("DTG") and MissionIR ("MIR") (the "DTG Defendants"), and Goldman Small Cap Research ("GSCR") and Robert Goldman (the "GSCR Defendants") (collectively with Plaintiffs, ForceField Defendants, DTG Defendants and GSCR Defendants are the "Settling Parties"), by and through their respective counsel.

1

**WHEREAS:**

### A. The Action

This Action commenced with the filing of the class action complaint styled *Lori Atkinson v. ForceField Energy Inc., et al*., 15-cv-3020, alleging violations of federal securities laws by the Defendants (the "Atkinson Action"), filed in the United States District Court for the Southern District of New York ("S.D.N.Y.") on April 17, 2015 (Dkt. No. 1).

A class action complaint styled *Hannah Miller v. ForceField Energy Inc*., et al., 1:15- cv-03141 alleging violations of federal securities laws was filed in the S.D.N.Y. (the "Miller Action") on April 21, 2015;

A class action complaint styled *Dean Rosales, et al., v. ForceField Energy Inc*., et al., 15-cv-3279 alleging violations of federal securities laws was filed in the S.D.N.Y. (the "Rosales Action") on April 27, 2015.

By Order dated July 22, 2015, the Court consolidated the Atkinson Action, Miller Action, and the Rosales Action under the caption *In re ForceField Energy, Inc. Securities Litigation* and master file Case No. 15-cv-30250 (the "Consolidated Action"), and appointed Beverly Brewer as Lead Plaintiff and approved her selection of The Rosen Law Firm, P.A. as interim Lead Counsel (Dkt. No. 37).[1]

On August 21, 2015, Plaintiffs filed the Consolidated Amended Complaint For Violations of the Federal Securities Laws ("FAC") alleging: violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder against Defendants (Count

---

[1] On June 26, 2015, an action was commenced in front of the U.S. Judicial Panel on Multidistrict Litigation ("MDL"), Case No. 15-MD-2655. The request to transfer the Actions to the U.S. Eastern District of New York was denied on October 15, 2015. The Court's July 22, 2015 Order directed Lead Plaintiff Brewer to inform the Judicial Panel on MDL of this order.

1); and violation of Section 20(a) of the Exchange Act against the ForceField Defendants and Defendant Richard St. Julien (Count 2) (Dkt. No. 40).

After a conference held on October 6, 2015 to discuss the ForceField Defendants' anticipated motion to dismiss, Plaintiffs filed the Consolidated Second Amended Complaint For Violation of the Federal Securities Laws ("SAC") on November 2, 2015 (Dkt. No. 65).

On December 4, 2015, the ForceField Defendants filed a motion to dismiss the SAC (Dkt. No. 83) and the DTG Defendants filed a motion to dismiss the SAC (Dkt. No. 82).[2]

After a telephonic pre-motion conference held on May 12, 2016, on May 16, 2016 the Court granted Plaintiffs' request for leave to amend (Dkt. No. 112). On May 23, 2016, Plaintiffs filed the operative Consolidated Third Amended Complaint For Violation of the Federal Securities Laws ("TAC") (Dkt. No. 113).

On April 8, 2016, counsel for the GSCR Defendants notified the Court that Plaintiffs and the GSCR Defendants reached a settlement and were in the process of executing a Memorandum of Understanding ("DTG MOU") (Dkt. No. 107). On May 20, 2016, Plaintiffs and the GSCR Defendants executed a Memorandum of Understanding (GSCR MOU) to settle the claims against the GSCR Defendants.

On March 1, 2017, counsel for the DTG Defendants notified the Court that Plaintiffs and DTG Defendants reached a settlement and were in the process of executing a Memorandum of Understanding ("DTG MOU") (Dkt. No. 219). On April 4, 2017, the Court granted Plaintiffs' Notice of Voluntary Dismissal With Prejudice as to the DTG Defendants and GSCR Defendants (Dkt. No. 227).

---

[2] Following deficiency notices, these motions were re-filed as Dkt. Nos. 84 and 89, respectively.

On June 27, 2016, the DTG Defendants and the ForceField Defendants filed motions to dismiss the TAC (Dkt. Nos. 143, 144). On March 29, 2017, the Court issued an order and opinion granting in part and denying in part the ForceField Defendants' motion to dismiss the TAC (Dkt. No. 225). On May 12, 2017, the ForceField Defendants filed their Answers (Dkt. Nos. 230 – 232).

### B. Derivative Action

On May 13, 2015, the derivative action *Neil J. Brown v. ForceField Energy, Inc., et al.,* Case No. 15-cv-02782,[3] was filed in the U.S. District Court for the Eastern District of New York on behalf of ForceField, alleging breaches of fiduciary duty related to the claims in the Consolidated Securities Class Action, against Defendants Richard St. Julien, David Natan, Jason Williams, and ForceField directors David Venderhorst, Adrian Auman, and Kebir Ratnani.[4] The Settling Parties agree that the resolution in the related Derivative Action was a material factor in the resolution of this Action.

### C. The Settlement

Prior to executing the DTG Defendants' MOU, the GSCR Defendants' MOU and reaching agreement with the ForceField Defendants, Lead Counsel conducted an investigation relating to the claims and the underlying events and transactions alleged in the Action. This process included reviewing and analyzing: (i) documents filed publicly by ForceField with the United States Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Defendants; (iii) input

---

[3] The consolidated derivative action is titled *In re Forcefield Energy, Inc. Deriv. Litig.*, No. 1:15-cv-02782-ARR-VVP (E.D.N.Y.) ("Derivative Action").

[4] Another derivative action, *Su v. St. Julian, et al.,* Case No. 15-cv-4080-FB-VVP, was filed on July 10, 2015 in the U.S. District Court for the Eastern District of New York and was consolidated with the *Brown* action by order dated January 12, 2016.

of information and advice by Plaintiffs; and (iv) the applicable law governing the claims and potential defenses.

Counsel for the Settling Parties conducted intensive settlement negotiations to resolve the Action. After substantial discussions, Lead Counsel and Counsel for DTG Defendants reached a settlement in principle and executed the DTG MOU. Similarly, Lead Counsel and Counsel for the GSCR Defendants reached a settlement in principle and executed the GSCR MOU.[5]  Given the precarious financial position of Settling Defendants, and that ForceField does not appear to be actively conducting business, this analysis, in the Plaintiffs' judgment has provided an adequate and satisfactory basis for the evaluation of an agreement to settle, as described herein.

Lead Counsel and Counsel for the ForceField Defendants conducted intensive settlement negotiations and reached a settlement in principle on June 28, 2017. This Stipulation encompasses the terms of the Settlement between Plaintiffs and the ForceField Defendants.

### D.  The Defendants' Denial Of Wrongdoing And Liability

Settling Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws.  Settling Defendants have denied and continue to deny each and every one of the claims alleged by Plaintiffs on behalf of the Class, including all claims in the TAC.

This Stipulation, whether or not consummated, any proceedings relating to any settlement of the Class Action, or any of the terms of any such settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Settling Defendants with respect to any fact or matter alleged in the Class Action, or any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity in any claim or defense

---

[5] The DTG MOU and the GSCR MOU are incorporated by reference.

that has been or could have been asserted. Settling Defendants are entering into this Settlement solely to eliminate the burden, expense, uncertainty, and distraction of further litigation. This Stipulation also shall not be construed as or be deemed to be a concession by the Plaintiffs of any infirmity in the claims asserted in the Class Action.  The Settling Parties wish to settle and compromise any dispute regarding the Class Action or its subject matter, including but not limited to whether the Class Action was filed by the Plaintiffs and defended by Settling Defendants in good faith and with adequate basis in fact under Rule 11 of the Federal Rules of Civil Procedure. The Settling Parties agree that the Class Action is being voluntarily settled after advice of counsel and that the terms of the Settlement are fair, adequate, and reasonable.

### E.  Claims of Plaintiffs And Benefits of Settlement

In recognition of the attendant risks and costs of continued Class Action and the benefits of resolving this Class Action, the Settling Parties desire to settle and resolve any and all actual or potential claims by, between, or among Plaintiffs, on the one hand, and the Settling Defendants, on the other hand, arising out of or relating to the subject matter of this Class Action.

Based upon the investigation conducted by Lead Counsel, Plaintiffs believe that the claims asserted in the Class Action have merit and that the evidence developed to date supports the claims asserted. However, Lead Counsel has concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Plaintiffs, and in their best interests, and Plaintiffs have agreed to settle the claims asserted in the Class Action pursuant to the terms and conditions of this Stipulation, after considering: (a) the substantial benefits that Plaintiffs will receive from settlement of the Class Action; (b) the attendant risks of prosecuting the Class Action; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

Settling Defendants conditionally stipulate, for the limited purposes of this Stipulation and the creation of a settlement class, that the Class Action shall be certified for class treatment under Rule 23 of the Federal Rules of Civil Procedure and that the stipulated settlement class consists of Settlement Class Members, as defined below. This conditional stipulation as to the creation of a settlement class is contingent upon the execution of this Stipulation by the Settling Parties and its final approval by the Court. If this Stipulation is for any reason not finally approved, or is otherwise terminated, Settling Defendants reserve the right to assert any and all available objections and defenses to certification of any class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Settling Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties hereto from the Settlement, that any and all claims made, or that could have been made, including all Settled Claims (as defined below), by Plaintiffs against the Released Parties (as defined below) shall be compromised, settled, released, and dismissed with prejudice as provided in this Stipulation, to the extent as hereafter provided, without costs as to Plaintiffs or Settling Defendants, upon and subject to the following terms and conditions:

**A.     DEFINITIONS**

As used in this Stipulation, the following terms have the meanings specified below:

1.      "Additional Settlement Amount" means monies in excess of the amount set forth in ¶ C.2 infra (the $356,000 paid by Forcefield's insurers into the Escrow Account and the $44,000 paid by Forcefield's insurers pursuant to the Derivative Action stipulation of settlement), that currently remains available pursuant to the ForceField Defendants' insurance coverage, in the amount of one hundred thirty one thousand six hundred thirty six U.S. dollars ($131,636).  The

Additional Settlement Amount, to be paid by ForceField's insurer or the ForceField Defendants, will be held by Forcefield's Insurer, and will be distributed, if at all, within fifteen (15) days upon the earlier of: (i) the SEC and the United States Department of Justice ("DOJ") stating that they will not be pursuing claims or charges against the ForceField Defendants;[6] or (ii) the date upon which the statute of limitations for any action against the Forcefield Defendants by the SEC or DOJ will expire, specifically June 30, 2020. If funds are needed to defend the ForceField Defendants from any action initiated by the SEC and/or DOJ against any of the Forcefield Defendants, counsel for the Forcefield Defendants shall provide a quarterly accounting to Lead Counsel of the funds remaining. Funds shall not be paid out of the Additional Settlement Amount for any purpose other than defense of the ForceField Defendants from any action initiated by the SEC and/or DOJ against any of the Forcefield Defendants. If the SEC and/or DOJ pursue claims or charges against the Forcefield Defendants, and at the conclusion of any such Action monies remain in the Additional Settlement Amount, such monies will be distributed to "Authorized Claimants," defined *infra*., in accordance with the "Plan of Allocation," also defined *infra*.  No separate Notice will be sent to potential Claimants with respect to the Additional Settlement Amount.

      2.      "Attorneys' Fees and Expenses" means the portion of the Gross Settlement Fund approved by the Court for payment to Lead Counsel, including attorneys' fees, costs, litigation

---

[6] Counsel for the ForceField Defendants shall notify Lead Counsel within five (5) days of receiving any notice of an SEC or DOJ investigation, including but not limited to any Wells Notices, from the SEC. Thereafter, ForceField Defendants will provide Lead Counsel with monthly updates on the status of any investigation or action. Counsel for the ForceField Defendants shall further notify Lead Counsel within five (5) days of receiving any notice from the SEC and/or DOJ stating that they will not be instituting charges or claims against any or all of the Forcefield Defendants.

expenses, and fees and expenses of experts (excluding Notice and Administration Expenses (defined below)).

3.      "Claimant" means any Settlement Class Member who files a Proof of Claim and Release (as defined below) in such form and manner, and within such time, as set forth in this Stipulation or as the Court shall prescribe.

4.      "Authorized Claimant" means any Claimant whose claim for recovery has been allowed pursuant to the terms of the Stipulation or by order of the Court.

5.      "Award to Plaintiffs" means any award by the Court to Lead Plaintiff or Named Plaintiffs of reasonable costs and expenses (including lost wages) directly relating to the representation of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4).

6.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, and losses whatsoever, whether in law, in admiralty, or in equity and whether based on any federal, state, or foreign statutory or common-law right of action or otherwise, whether class or individual in nature, foreseen or unforeseen, matured or unmatured, known, or unknown, existing now or to be created in the future, including Unknown Claims.

7.      "Claims Administrator" means "Strategic Claims Services" ("SCS") the accounting and claims administration firm that Lead Counsel requests be appointed by the Court to administer the Settlement and disseminate notice to the Settlement Class.

8.      "Court" means the United States District Court for the Southern District of New York.

9.      "Effective Date" means the date on which all of the conditions set forth below in paragraph K.1 shall have been satisfied and the Court's Order and Final Judgment, substantially in the form of Exhibit B hereto, becomes "Final." The Court's Order and Final Judgment shall be deemed to be Final when either of the following has occurred: (a) if an appeal or review is not sought by any Person from the Order and Final Judgment, the day following the expiration of the time to appeal or petition from the Order and Final Judgment; or (b) if an appeal or review is sought from the Order and Final Judgment, the day after such Order and Final Judgment is affirmed or the appeal or review is dismissed or denied and such Order and Final Judgment is no longer subject to further judicial review. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment or Alternative Judgment to become Final, or otherwise preclude the Judgment or Alternative Judgment from becoming Final.

10.      "Escrow Agent" means SCS or its appointed agents.

11.      "Escrow Account" means the account selected by the Escrow Agent. The Escrow Account shall be managed by the Escrow Agent for the benefit of Plaintiffs and the Settlement Class until the Effective Date of the Settlement.

12.      "Gross Settlement Fund" means the Settlement Amount plus any interest earned thereon.

13.      "Lead Plaintiff" means Plaintiff Beverly Brewer.

14.      "Lead Counsel" means The Rosen Law Firm, P.A.

15.      "Named Plaintiffs" means Plaintiffs Nipul Patel and Edward Huang.

16.     "Plaintiffs" means collectively Lead Plaintiff Beverly Brewer and Named Plaintiffs Nipul Patel and Edward Huang.

17.     "Net Settlement Fund" means the Gross Settlement Fund, less: (i) Attorneys' Fees and Expenses; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; (iv) any Award to Plaintiffs; and (v) other fees and expenses authorized by the Court.

18.     "Notice and Administration Account" means the account to be established from the Gross Settlement Fund and maintained by Lead Counsel. The Notice and Administration Account may be drawn upon by Lead Counsel for Notice and Administration Expenses without further order of the Court.

19.     "Notice and Administration Expenses" means all expenses incurred (whether or not paid) in connection with the preparation, printing, mailing, and publication of the Notice to the Settlement Class of the proposed settlement, and all expenses of Settlement administration; provided, however, that none of these expenses shall be deemed to include Attorneys' Fees and Expenses through the Effective Date. All such Notice and Administration Expenses shall be paid from the Gross Settlement Fund.

20.     "Order and Final Judgment" means the order and judgment entered by the Court, including a Bar Order, approving the Settlement and dismissing the Class Action as against the Defendants with prejudice and without costs to any party.

21.     "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, affiliate, joint stock company, trust, estate, unincorporated association, government, or any political subdivision or agency thereof, any other type of legal or political entity, any legal representative, and, as applicable, their respective spouses, heirs, predecessors, successors, representatives, and assigns.

22.     "Plan of Allocation" means the plan for allocating the Net Settlement Fund (as set forth in the Notice, attached as Exhibit A-1 to the Order of Preliminary Approval of Settlement) to Authorized Claimants after payment of Notice and Administration Expenses, Taxes and Tax Expenses, and Attorneys' Fees and Expenses. Any Plan of Allocation is not part of the Stipulation and the Released Parties shall have no liability with respect thereto.

23.     "Released Parties" means Settling Defendants, their past or present or future subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, and attorneys (including in-house counsel and outside attorneys), auditors, and insurers; the immediate family members, representatives, and heirs of the Settling Defendants; any trust of which any Settling Defendant is the settlor or which is for the benefit of any immediate family member of any Settling Defendant; any firm, trust, corporation, or entity in which any of the Defendants has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of the Settling Defendants. Excluded from Released Parties are Richard St. Julien, Herschel C. "Tres" Knippa III, Richard L. Brown, Chelsea Morgan Securities, Inc., dba Chelsea Financial Services, Gerald Cocuzzo, Newbridge Securities Corporation, Naveed A. "Nick" Khan, Meyers Associates, L.P., Maroof Miyana, Legend Securities, Inc., Pranav V. Patel, and Dawson James Securities, Inc. Plaintiffs are not releasing their claims against the individuals and entities listed in the preceding sentence.

24.     "Settled Claims" means any and all Claims, known or Unknown (as defined herein), accrued or not accrued, at law or in equity, which have been or could have been asserted individually, on behalf of a class and/or derivatively by Plaintiffs and/or any Settlement Class Member against any and all of the Released Parties that relate to, arise out of, or are based upon

(i) any purchase, sale, or ownership of ForceField common stock during the Class Period and/or (b) any of the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act set forth or referred to in the complaints filed in the Class Action. Settled Claims also include any and all claims arising out of, relating to, or in connection with the Settlement or resolution of the Class Action against the Released Parties (including Unknown Claims that arise out of, relate to, or are in connection with the Settlement or resolution of the Class Action against the Released Parties), except claims to enforce any of the terms of this Stipulation. Excluded from the "Settled Claims" are the claims brought in the Derivative Action.

25.     "Settled Defendants' Claims" means all claims, demands, rights, remedies, liabilities, and causes of action of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, that (i) have been or could have been asserted in the Class Action by Defendants or their successors and assigns, against Plaintiffs, Settlement Class Members, or any of their attorneys, and (ii) arise out of or relate in any way to the institution, prosecution, or Settlement of this Class Action or the Settled Claims, including but not limited to all claims for malicious prosecution or sanctions.  "Settled Defendants' Claims" does not include claims to enforce any of the terms of this Stipulation or of the Order and Final Judgment.

26.     "Settling Defendants" means ForceField Energy Inc., Jason Williams, David Natan, DreamTeamGroup, MissionIR, Robert Goldman, and Goldman Small Cap Research.

27.     "Settlement" means the settlement contemplated by this Stipulation.

28.     "Settlement Amount" means a fund in the guaranteed amount of $414,500 (Four Hundred Fourteen Thousand and Five Hundred Dollars), as well as the remaining Additional

Settlement Amount. For the avoidance of doubt, $356,000 of the Settlement Amount will be paid by ForceField's insurer, an amount exclusive of the Additional Settlement Amount which is payable pursuant to the terms and conditions outlined above; $30,000 of the Settlement Amount has been paid by the DTG Defendants into an escrow account; and the remaining $28,500 of the $414,500 has been paid by the GSCR Defendants into an escrow account.

29.     "Settlement Class" and "Settlement Class Members" mean, for purposes of this Settlement, all Persons who purchased or otherwise acquired the common stock of ForceField during the period from August 20, 2013 through and including April 20, 2015 (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are Settling Defendants, and all current and former officers, directors and control persons of ForceField, and such excluded persons' immediate families, legal representatives, heirs, predecessors, successors, and assigns, and any entity in which any excluded person has or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval concerning this Stipulation. Also excluded from the Settlement Class are persons who have a net profit in purchases and sales of ForceField common stock or otherwise suffered no compensable damages under the securities laws during the Class Period. Also excluded from the Settlement Class are any brokerage houses or brokers, including those listed in paragraph A.23.  Also excluded from the Settlement Class is the person identified as "CC-1" in the Third Amended Complaint, and any persons identified as conspirators or co-conspirators in the civil action brought by the Securities and Exchange Commission, *SEC v. St. Julian*, et al., No. 1:16-cv-2193 (E.D.N.Y. May 3, 2016), or in the criminal indictment brought by the United States government, *U.S. v. Mitchell*, et al., No 1:16-cr-00234-BMC (E.D.N.Y. May 2, 2016).

30.     "Settlement Class Distribution Order" means the order entered by the Court, upon application of Lead Counsel, following the occurrence of the events identified in paragraph D.6. below, which authorizes the Claims Administrator to distribute the Net Settlement Fund to the Settlement Class.

31.     "Settlement Class Period" means the period from August 20, 2013 through and including April 20, 2015, inclusive.

32.     "Settlement Hearing" means the final hearing to be held by the Court to determine: (1) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (2) whether all Settled Claims should be dismissed with prejudice; (3) whether an order approving the Settlement should be entered thereon; (4) whether the allocation of the Net Settlement Fund should be approved; and (5) whether the application for an award of Attorneys' Fees and Expenses and an Award to Plaintiffs should be approved.

33.     "Unknown Claims" means any and all Settled Claims that Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims that Defendants do not know or suspect to exist in his, her, or its favor, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Settled Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs and Settling Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law

of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, the Settlement Class Members, or Settling Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but Plaintiffs and Settling Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Settled Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiffs and Settling Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims was separately bargained for and was a material element of the Settlement.

### B.    SCOPE AND EFFECT OF SETTLEMENT AND RELEASES

1.    The obligations incurred pursuant to this Stipulation are subject to approval by the Court, such approval becoming Final, and are in full and final disposition of the claims in the Class Action with respect to the Released Parties and any and all Settled Claims.

2.    Pursuant to the Judgment or Alternative Judgment, without further action by anyone, and whether or not a Proof of Claim has been executed and/or delivered by or on behalf of any Settlement Class Member, on and after the Effective Date, Plaintiffs and each and every

16

other Settlement Class Member, on behalf of themselves and each of their respective agents, representatives, heirs, executors, trustees, administrators, beneficiaries, predecessors, affiliates (as defined in 17 C.F.R. part 210.1-02.b), successors and assigns, and any entity claiming by or through any of the Settlement Class Members, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment or Alternative Judgment shall have, fully, finally and forever waived, released, discharged and dismissed with prejudice:

     a.     each and every one of the Settled Claims as against each and every one of the Released Parties;

     b.     all Claims, damages, and liability as to any or all of the Plaintiffs, Lead Counsel, Settling Defendants' Counsel, and each and every one of the Released Parties that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the prosecution, defense, or settlement of the Class Action or to this Stipulation or the Settlement; and

     c.     all Claims against any of the Released Parties for attorneys' fees, costs, or disbursements incurred by Lead Counsel or the other Settlement Class Members (or any of them) in the Class Action, in connection with or related in any manner to the Class Action, the settlement of the Class Action, or the administration of the Class Action and/or its settlement except to the extent otherwise specified in this Stipulation.

     3.     Pursuant to the Judgment or Alternative Judgment, without further action by anyone, on and after the Effective Date, the Settling Defendants, on behalf of themselves and each of their respective agents, representatives, heirs, executors, trustees, administrators, beneficiaries,

assigns, and any person or entity claiming by or through any of the Settling Defendants, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment or Alternative Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged the Settled Defendants' Claims and shall forever be enjoined from prosecuting the Settled Defendant's Claims as against any of the Plaintiffs, Settlement Class Members, or their attorneys, including but not limited to claims for malicious prosecution or sanctions.

4.      Pursuant to the Judgment or Alternative Judgment, without further action by anyone, on and after the Effective Date, Lead Counsel, on behalf of themselves and each of their respective agents, representatives, heirs, executors, trustees, administrators, beneficiaries, predecessors, affiliates (as defined in 17 C.F.R. part 210.1-02.b), successors and assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment or Alternative Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Settling Defendants' Counsel and all Released Parties from any and all Claims, whether known Claims or Unknown Claims, that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Class Action, or to this Stipulation or the Settlement.

5.      Notwithstanding the above provisions, nothing in the Judgment or Alternative Judgment shall bar any action or Claim by the Settling Parties to enforce the terms of this Stipulation or the Judgment or Alternative Judgment.

6.      The releases and waivers contained in B.2, B.3, and B.4 above were separately bargained for and are essential elements of this Stipulation.

### C.    THE SETTLEMENT CONSIDERATION

1.     Except as otherwise provided herein, the Gross Settlement Fund shall be held in the Escrow Account until the Effective Date.

2.     Subject to the terms of this Stipulation, and upon receipt from Lead Counsel of wiring instructions and a completed Form W-9, ForceField's insurers, on behalf of the ForceField Defendants, shall, within the latter of fifteen (15) business days after the Court issues the Preliminary Approval Order, or fifteen (15) business days after preliminary approval of the Derivative Action, pay or cause to be paid the sum of $356,000 (Three Hundred and Fifty Six Thousand Dollars) into the Escrow Account, which amount shall be exclusive of the $44,000 (Forty Four Thousand Dollars) settlement payment ForceField's insurers are required to make pursuant to the Derivative Action stipulation of settlement. Additionally, pursuant to the terms and conditions described in paragraph A.1., *supra.*, ForceField's insurer or the ForceField Defendants, on behalf of the ForceField Defendants, shall pay or cause to be paid the Additional Settlement Amount. The DTG Defendants have already paid the sum of $30,000 into an escrow account controlled by Lead Counsel, and the GSCR Defendants have already paid the sum of $28,500 into an escrow account controlled by Lead Counsel. These four payments in total – two from the ForceField Defendants, to be paid by ForceField's insurer or, in the case of the Additional Settlement Amount, by the ForceField Defendants or by ForceField's insurer, one from the DTG Defendants, and one from the GSCR Defendants – constitute the Settlement Amount.

3.     The Gross Settlement Fund, net of any Taxes (as defined below) on the income thereof and any Tax Expenses (as defined below), shall be used to pay: (i) the Notice and Administration Expenses as authorized by this Stipulation; (ii) Attorneys' Fees and Expenses authorized by the Court; (iii) any Award to Plaintiffs authorized by the Court; and (iv) other fees

and expenses authorized by the Court. The balance of the Gross Settlement Fund remaining after the above payments shall be the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Stipulation.

4.      Any sums required to be held in escrow hereunder shall be held by the Escrow Agent for the benefit of the Plaintiffs and the Settlement Class until the Effective Date, except that some or all of the monies comprising the Additional Settlement Amount may be utilized for defense costs, pursuant to the provisions and limitations herein, and in paragraph A.1., *supra*.  Until the date the Order and Final Judgment is entered, all payments made from the Gross Settlement Fund shall require the signature of an authorized representative of the Escrow Agent and Settling Defendants' counsel. After the Order and Final Judgment is entered, payments made from the Gross Settlement Fund shall require only the signature of an authorized representative of the Escrow Agent and shall not require the signature of Settling Defendants' counsel. All funds held by the Escrow Agent shall be deemed to be in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to this Stipulation and/or further order of the Court. Other than amounts disbursed for providing Notice to the Settlement Class, customary administration costs, and Taxes and Tax Expenses, and the Attorneys' Fees and Expenses (which shall be paid to Lead Counsel within two (2) business days after the Court executes an order awarding such fees and expenses), the Gross Settlement Fund shall not be distributed until the Effective Date. The Escrow Agent shall not disburse the Gross Settlement Fund, or any portion thereof, except as provided in this Stipulation, or upon Order of the Court.

5.      The Escrow Agent shall invest any funds in excess of $100,000 in short-term United States Treasury Securities (or a mutual fund invested solely in such instruments), and shall

collect and reinvest all interest accrued thereon. The Released Parties will have no rights with regard to or liability for the management, investment or distribution of the Gross Settlement Fund or Net Settlement Fund or any losses suffered by, or fluctuations in the value of them; provided, however, that nothing herein limits Settling Defendants' right to receive repayment of the Gross Settlement Fund if there is not an Effective Date or the Settlement does not become final. Any funds held in escrow in an amount of less than $100,000 may be held in a bank account insured to the extent possible by the FDIC. Interest earned on the money deposited into the Escrow Account shall be part of the Gross Settlement Fund.

6.      The Notice and Administration Expenses shall be paid from the Gross Settlement Fund. In order to pay Notice and Administration Expenses, sixty thousand U.S. dollars ($60,000) shall be withdrawn from the Gross Settlement Fund and deposited into a Notice and Administration Account upon the entry of the Preliminary Approval Order. After the Effective Date, additional amounts, up to sixty thousand U.S. dollars ($60,000) may be transferred from the Gross Settlement Fund to pay for any necessary additional Notice and Administration Expenses without further order of the Court. Any monies from the Notice and Administration Account that remain after administration shall be returned to the Gross Settlement Fund. The Notice and Administration Account shall be administered solely by the Escrow Agent. Any taxes or other expenses incurred in connection with the Notice and Administration Account shall be paid from the Notice and Administration Account or from the remainder of the Gross Settlement Fund. The Released Parties shall not have any obligation for payment of taxes or other expenses associated with the Notice and Administration Account. In no event shall an amount more than the Settlement Amount be paid for Notice and Administration Expenses, and in no event shall the Released Parties be responsible to pay any amount for Notice and Administration Expenses.

7.      Settling Defendants shall have access to all records of the Escrow Account, and upon request made to the Escrow Agent, shall receive copies of all records of disbursements, deposits, and statements of accounts.

8.      After the Effective Date, the Released Parties shall have no interest in the Gross Settlement Fund or in the Net Settlement Fund. The Released Parties shall not be liable for the loss of any portion of the Gross Settlement Fund or Net Settlement Fund, nor have any liability, obligation, or responsibility for the payment of claims, taxes, legal fees, or any other expenses payable from the Gross Settlement Fund or Net Settlement Fund.

9.      The Settlement Amount is an all-in settlement number, meaning that it includes all attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and costs of any kind whatsoever associated with the resolution of this Class Action. Other than the obligation to cause payment of the Settlement Amount, including if applicable the Additional Settlement Amount, Settling Defendants shall have no obligation to make any payment into the Escrow Account or to any Settlement Class Member or any other Person or entity pursuant to this Stipulation.  For the avoidance of doubt, under no circumstances shall the total to be paid by Settling Defendants or ForceField's insurers pursuant to this Stipulation exceed the Settlement Amount.

## D.      ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND DISTRIBUTION OF NET SETTLEMENT FUND

1.      The Claims Administrator shall administer and calculate the claims that shall be allowed and oversee distribution of the Net Settlement Fund, under the supervision of Lead Counsel, and subject to appeal to, and jurisdiction of, the Court. The Released Parties shall have no liability, obligation, or responsibility for the administration of the Gross Settlement Fund or Net Settlement Fund, or for the distribution of the Net Settlement Fund.

2.      Except as otherwise provided below, on and after the Effective Date, the Gross Settlement Fund shall be applied as follows:

a.      To the extent not paid from the Notice and Administration Account, to pay, following an order of the Court approving any such payment, the expenses incurred in connection with providing notice to Settlement Class Members, administering and distributing the Net Settlement Fund to Settlement Class Members, processing Proofs of Claim, processing requests for exclusion, escrow fees and costs, and any applicable taxes;

b.      Subject to the approval and further order(s) of the Court, the Net Settlement Fund shall be allocated to Authorized Claimants as set forth in paragraph F. below.

c.      After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Lead Counsel shall file a motion for distribution of the Net Settlement Fund with the Court listing each Authorized Claimant, the amount of each claim that Lead Counsel believes should be allocated and distributed to each such Authorized Claimant, accounting for all Notice and Administration Expenses, and requesting Court approval to distribute the Net Settlement Fund to the Authorized Claimants and pay any further Notice and Administration expenses. After one of the events occurs allowing the release of the Additional Settlement Amount, Lead Counsel shall file a motion for distribution of the Additional Settlement Amount with the Court listing each Authorized Claimant, the amount of each claim that Lead Counsel believes should be allocated and distributed to each such Authorized Claimant, accounting for all Notice and Administration Expenses, and requesting Court approval to distribute the Additional Settlement Amount to the Authorized Claimants and pay any further Notice and Administration Expenses.

3.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit a Proof of Claim and Release (in substantially the form and content set forth in Exhibit A-3 hereto, which *inter alia* releases all Settled Claims against all Released Parties), signed under penalty of perjury by the beneficial owner(s) of the securities that are the subject of the Proof of Claim and Release, or by someone with documented authority to sign for the beneficial owners and supported by such documents as specified in the instructions accompanying the Proof of Claim and Release.

4.      All Proofs of Claim must be received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Lead Counsel in its discretion deems such late filing to be a formal or technical defect, or unless by Order of the Court a later submitted Proof of Claim by such Settlement Class Member is approved), but will in all other respects be subject to the provisions of this Stipulation and Order and Final Judgment, including, without limitation, the release of the Settled Claims and dismissal of the Class Action.  Provided that it is received before the motion for the Settlement Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

5.      Each Proof of Claim shall be submitted to the Claims Administrator who shall determine, under the supervision of Lead Counsel, in accordance with this Stipulation and any

applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to appeal to the Court.

6.      Following notice to Settling Defendants' counsel, Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.      Proofs of Claim that do not meet the filing requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such notice that the Claimant whose claims are to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirement of paragraph D.8 below.

8.      If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within ten (10) business days after the date of mailing of the notice required by paragraph D.7 above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

9.      The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Settling Defendants' counsel, for approval by the Court in the Settlement Class Distribution Order.

10.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Class Action or Settlement in connection with processing of the Proofs of Claim, nor shall any discovery from or of the Released Parties be permitted on any topic.

11.     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but are otherwise bound by all of the terms of the Order and Final Judgment to be entered in the Class Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties arising out of or relating to the Settled Claims.

12.     All proceedings with respect to the administration, processing, and determination of claims described by this paragraph of this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

13.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator upon application to the Court by Lead Counsel for a Settlement Class Distribution Order only after all of the following having occurred:  (i) the Effective Date;  (ii) all claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (iii) all objections with respect to all rejected or disallowed claims have

been resolved by the Court, and all appeals therefrom have been resolved or the time therefore has expired; (iv) all matters with respect to Attorneys' Fees and Expenses, costs, and disbursements have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (v) all costs of administration have been paid.

14.     If any of the Net Cash Settlement Amount remains by reason of uncashed checks, or otherwise, after the Settlement Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Cash Settlement Amount cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional Notice and Administrative Expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Cash Settlement Amount and in making this second distribution, if such second distribution is economically feasible. If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds remain in the Net Cash Settlement Amount, any funds remaining in the Net Cash Settlement Amount shall be donated to a non-sectarian, non-profit 501(c)(3) organization(s) selected by Lead Counsel.

If monies remain in the Additional Settlement Amount and the conditions precedent for its distribution are met, then the Claims Administrator will use the funds to (i) pay any additional Notice and Administrative Expenses incurred in administering the Settlement; and (ii) in accordance with the Plan of Allocation, distribute the Additional Settlement Amount to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such distribution, after payment of the estimated costs or fees to be incurred in administering the Additional Settlement Amount and in making this distribution, if such distribution is economically feasible.  No separate Notice will be sent to Authorized Claimants before distribution of any monies remaining in the Additional Settlement Amount.  Any funds remaining from the Additional Settlement Amount shall be donated to a non-sectarian, non-profit 501(c)(3) organization(s) selected by Lead Counsel.

15.     The Additional Settlement Amount shall be distributed to Authorized Claimants by the Claims Administrator upon application to the Court by Lead Counsel for a Settlement Class Distribution Order only after all of the following having occurred: (i) the Effective Date; (ii) all matters with respect to Attorneys' Fees and Expenses, costs, and disbursements have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (iii) all costs of administration have been paid.

16.     Before the Effective Date, Lead Counsel shall file with the Court a declaration under penalty of perjury describing how notice of the Settlement was given to the Settlement Class and listing the names and addresses of all Persons to whom individual notice of the Settlement was mailed.

17.     No Person shall have any claim of any kind against the Released Parties or their counsel with respect to the matters set forth in this Section or any of its subsections, or otherwise

related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

**E.      TAX TREATMENT**

1.      The Settling Parties agree to treat the Gross Settlement Fund as being at all times a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and § 468B of the Internal Revenue Code, as amended, for the taxable years of the Gross Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, the Settling Parties, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.      For purposes of § 468B of the Internal Revenue Code, as amended, and the regulations promulgated thereunder, the "administrator" shall be Lead Counsel. Lead Counsel shall timely and properly file all tax returns necessary or advisable with respect to the Gross Settlement Fund, and make all required tax payments, including deposits of estimated tax payments in accordance with Treas. Reg. § 1.468B-2(k). Such returns (as well as the election described in paragraph E.1. hereof) shall be consistent with this paragraph and reflect that all taxes (including any interest or penalties) on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in paragraph E.3. herein.

3.      All (i) taxes (including any interest or penalties) arising with respect to the income earned by the Gross Settlement Fund and the Additional Settlement Amount Escrow Fund,

including any taxes or tax detriments that may be imposed upon the Settling Defendants with respect to any income earned by the Gross Settlement Fund and by the Additional Settlement Amount Escrow Fund for any period during which the Gross Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph) ("Tax Expenses"), shall be paid out of the Gross Settlement Fund and the Additional Settlement Amount Escrow Fund. In all events, the Released Parties shall have no liability for Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Gross Settlement Fund and the Additional Settlement Amount Escrow Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to the Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1468B-2(l)(2)). The Released Parties shall have no responsibility or liability therefor. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

## F.  ALLOCATION OF NET SETTLEMENT FUND

1.  The Plan of Allocation is based upon Lead Counsel's assessment of the merits and the relative strengths and weaknesses, including recoverable damages, of the claims of the Settlement Class Members.

2.      Settling Defendants do not and shall not take any position as to the proposed Plan of Allocation.

3.      The Released Parties shall have no responsibility for and no obligations or liabilities of any kind whatsoever in connection with the determination, administration, calculation, or payment of claims to Settlement Class Members.

4.      Settling Defendants shall have no involvement in the solicitation of, or review of Proofs of Claim, or involvement in the administration process itself, which shall be conducted by the Claims Administrator in accordance with this Stipulation and the Order and Final Judgment to be entered by the Court. No Claimant or Authorized Claimant shall have any claim against the Released Parties or their counsel based on, or in any way relating to, the distributions from the Gross Settlement Fund, the Net Settlement Fund, or the Additional Settlement Amount Escrow Fund.

5.      No Authorized Claimant shall have any claim against Lead Counsel or the Claims Administrator based on, or in any way relating to, the distributions from the Net Settlement Fund or the Additional Settlement Amount Escrow Fund that have been made substantially in accordance with this Stipulation and any applicable orders of the Court.

6.      The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. Settling Defendants and Settling Defendants'

31

Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

**G.      OBLIGATIONS OF AND LIMITATIONS OF LIABILITY OF ESCROW AGENT**

4.      The Escrow Agent shall not be responsible for the payment of any sums due to Authorized Claimants or other Persons, except to the extent of maintaining account of and properly paying sums as required by this Stipulation to the limited extent that such sums have been delivered into the Escrow Account or Notice and Administration Account as required by this Stipulation. The Escrow Agent shall be liable only for acts of gross negligence or willful misconduct.

**H.      LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

1.      Lead Counsel intends to submit an application to the Court, on notice to counsel for Settling Defendants, for the payment of Attorneys' Fees and Expenses, including: (i) an award of attorneys' fees up to one-third of the Settlement Amount, including up to one-third of the Additional Settlement Amount; (ii) reimbursement of litigation costs and expenses, plus interest, including fees and expenses of experts, incurred in connection with the prosecution of the Class Action; and (iii) an Award to Plaintiff Beverly Brewer (for reimbursement of time and expenses).

2.      Any attorneys' fees and costs and Award to Plaintiffs awarded by the Court shall be paid from the Gross Settlement Fund within two (2) business days after the Court executes an order awarding such fees and expenses, and with respect to the Additional Settlement Amount, within (2) business days of receipt of the Additional Settlement Amount from the ForceField Defendants. If, and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the Attorneys' Fee and Expense award is overturned or lowered, or if the settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the settlement does not become final and binding upon the Class, then, within five (5)

32

business days from receiving notice from Settling Defendants' counsel or from a court of appropriate jurisdiction, Lead Counsel shall refund to the Gross Settlement Fund such fees and expenses previously paid to them from the Gross Settlement Fund plus interest thereon at the same rate as earned on the Gross Settlement Fund in an amount consistent with such reversal or modification.  Lead Counsel, as a condition of receiving such fees and expenses, on behalf of itself and each partner of it, agrees that the law firm and its partners are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

3.      Lead Counsel waives the right to make an additional application or applications for payment from the Gross Settlement Fund for fees and expenses incurred after the Settlement Hearing. Settling Defendants shall take no position on any application concerning Lead Counsel's request or award of attorneys' fees and reimbursement of expenses, or Award to Plaintiffs.

4.      It is agreed that the procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for Attorneys' Fees and Expenses, including fees for experts and consultants to be paid out of the Gross Settlement Fund, and any order or proceeding relating thereto, are not part of the Settlement set forth in this Stipulation, and are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to any fee and expense application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment or Alternative Judgment approving the Stipulation and the Settlement set forth herein, including, but not limited to, the release, discharge, and relinquishment of the Settled Claims, or any other orders entered pursuant to the Stipulation. Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation

or the Settlement based on the Court's or any appellate court's ruling with respect to fees and expenses in the Class Action.

5.    With the sole exception of the obligation to cause the payment of the Settlement Amount and Additional Settlement Amount, Settling Defendants and ForceField's insurers shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Lead Counsel that may occur at any time.

6.    Settling Defendants shall have no responsibility for, and no liability whatsoever with respect to, any allocation of any attorneys' fees or expenses among Lead Counsel, or any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Class Action.

7.    Settling Defendants shall have no responsibility or liability whatsoever with respect to any attorneys' fees, costs, or expenses incurred by or on behalf of the Settlement Class Members, whether or not paid from the Escrow Account.

## I.    THE PRELIMINARY APPROVAL ORDER

1.    Promptly after execution of this Stipulation, the Settling Parties shall submit the Stipulation together with its exhibits to the Court and shall jointly apply for entry of a Preliminary Approval Order in connection with settlement proceedings substantially in the form annexed hereto as Exhibit A, providing for, among other things, preliminary approval of the Settlement and notice to the Settlement Class of the Settlement Hearing. The Preliminary Approval Order (Exhibit A hereto) to be submitted to the Court shall contain exhibits substantially in the form set forth in: (i) the Notice of Pendency and Settlement of Class Action (the "Notice") (Exhibit A-1 to the Preliminary Approval  Order);  (ii) the Summary Notice of Pendency and Settlement of Class

Action ("Summary Notice") (Exhibit A-2 to the Preliminary Approval Order); and (iii) the Proof

of Claim and Release (Exhibit A-3 to the Preliminary Approval Order).

2.       The Released Parties are not liable or responsible for the method of, or

representations made in, the Notice or the Summary Notice.

**J.       ORDER AND FINAL JUDGMENT TO BE ENTERED BY THE COURT APPROVING THE SETTLEMENT**

1.       If the Court approves the Settlement contemplated by this Stipulation, the Settling

Parties shall seek to have the Court enter an Order and Final Judgment substantially in the form

of Exhibit B hereto.

2.       The Order and Final Judgment shall contain a PSLRA contribution bar provision

that provides as follows:

> In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the Class Action (i) by any person or entity against any of the Released Parties and (ii) by any of the Released Parties against any person or entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.  Accordingly, without limitation to any of the above, (i) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Released Parties any such claim for contribution, and (ii) the Released Parties are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such Claim for contribution.

**K.       CONDITIONS OF SETTLEMENT**

1.       The Effective Date of the Settlement shall be conditioned upon the occurrence or

waiver of ALL of the following events:

a.       The Court shall enter the Preliminary Approval Order in all material

respects, as required by paragraph I. above;

b.       No party shall have exercised within the required time period any right to

terminate the Settlement as permitted by paragraph L below;

c.     The Court shall enter the Order and Final Judgment in all material respects, as required by paragraph J. above;

d.     Final approval of settlement of the Derivative Action, provided however that issuance of an order on the plaintiffs' counsel application for attorneys' fees in the Derivative Action is not a condition of settlement. For the avoidance of doubt, the Effective Date shall occur even if no court has yet issued an order awarding attorney' fees in the Derivative Action, and/or even if such order is appealed, or if a motion for attorneys' fees is denied in whole or in part;

e.     The Court's Order and Final Judgment, substantially in the form of Exhibit B, shall have become "Final," as defined in paragraph A.9.; and

f.     The sum of $414,500 (Four Hundred Fourteen Thousand Five Hundred Dollars) shall have been paid, as set forth in paragraph C.2. above.

2.     Upon occurrence of ALL of the events referenced in paragraph K.1. above, Plaintiffs shall have, and each and all of the members of the Settlement Class shall hereby be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever, released, settled, and discharged, in accordance with the terms of paragraph B. above, the Released Parties, whether or not such members of the Settlement Class execute and deliver a Proof of Claim.

3.     Upon occurrence of ALL of the events referenced in paragraph K.1. above, the obligation of the Escrow Agent to return funds from the Gross Settlement Fund to ForceField's insurers pursuant to paragraph L.4., or any other provision hereof, shall be absolutely and forever extinguished.

## L.     RIGHTS OF TERMINATION AND EFFECTS THEREOF

1.     The Settling Parties shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other counsel of the Settling Parties within thirty (30) calendar days after the date on which any of the following occurs:

a.     the Court issues an order declining to enter the Preliminary Approval Order in any material respect;

b.     the Court issues an order declining to approve this Stipulation or any material part of it;

c.     the Court declines to enter the Order and Final Judgment in any material respect as required by paragraph J. above;

d.     the Order and Final Judgment is modified or reversed in any material respect by a Court of Appeals or the United States Supreme Court; or

e.     in the event that the Court enters an order and final judgment in a form other than that provided above (an "Alternative Judgment") and none of the Settling Parties elects to terminate this Settlement, the date that such Alternative Judgment is modified or reversed in any material respect by a Court of Appeals or the Supreme Court. For the avoidance of doubt, Plaintiffs shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting an application for attorneys' fees or expenses or any plan of allocation.

2.     If prior to the Settlement Hearing, (i) Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto, and such Persons in the aggregate purchased

shares of ForceField common stock during the Settlement Class Period in an amount greater than the amounts specified in a separate Supplemental Agreement between the Settling Parties (the "Supplemental Agreement"), or (ii) Persons file lawsuits alleging fraud in connection with the purchase of more than the number of shares of ForceField common stock specified in the Supplemental Agreement, then Settling Defendants shall have the option to terminate this Stipulation and Settlement in strict accordance with the requirements and procedures set forth in the Supplemental Agreement ("Opt-out Termination Option"). The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, and the Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises, and in such case will be filed under seal. Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion, shall be promptly delivered to Settling Defendants' counsel so as to be received no later than five (5) calendar days after receipt or fourteen (14) calendar days prior to the Settlement Hearing, whichever is earlier. The required procedure for and consequences of exercising an Opt-out Termination Option are as follows:

a.      To exercise the Opt-out Termination Option, Settling Defendants must serve written notice, signed by their counsel, upon counsel for Plaintiffs, not less than seven (7) calendar days before the Settlement Hearing;

b.      If Settling Defendants exercise the Opt-out Termination Option as provided herein, this Stipulation shall be null and void, and the provisions of paragraph L. hereof shall apply.

3.      If the Settlement Amount payable pursuant to paragraph C.2. of this Stipulation is not paid, then Plaintiffs, in their discretion, may elect, at any time prior to the Court's entering the Order and Final Judgment: (a) to terminate the Settlement by providing written notice to Settling

Defendants' Counsel; or (b) to enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

4.      If an option to withdraw from and terminate this Stipulation and Settlement arises under any of L.1-3 above: (i) neither Settling Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, in the sole and unfettered discretion of Settling Defendants or Plaintiffs, as applicable.

5.      Upon termination of the Stipulation pursuant to the terms of the Stipulation, the Escrow Agent shall refund the Gross Settlement Fund, less amounts already expended for Notice and Administrative Expenses to the Settlement Class pursuant to the terms of the Stipulation, to ForceField's insurers within five (5) business days thereafter (the "Returned Settlement Amount").

6.      If this Stipulation is terminated pursuant to its terms, and at the request of Settling Defendants or Plaintiffs, the Escrow Agent or his designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the percentage of the proceeds of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to ForceField insurers.

7.      If this Stipulation is terminated pursuant to its terms, all of the Settling Parties shall be deemed to have reverted to their respective status prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation had not been executed and the related orders had not been entered, preserving in that event all of their respective claims and defenses in the Class Action, and shall revert to their respective positions in the Class Action, except that the provisions of paragraphs E.1-3; G; L.6-9; M; N.4-6, 8, 13-14, and 17-18 shall survive termination, and except that, in accordance with the GSCR MOU and the DTG MOU, separate stipulations of

39

settlement shall be drafted and executed with the GSCR Defendants and the DTG Defendants upon resolution of all claims against all other Defendants in the Consolidated Action.

8.      No order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses, or Award to Plaintiffs awarded by the Court shall constitute grounds for cancellation or termination of the Stipulation.

9.      Settling Defendants' conditional stipulation to the creation of a Settlement Class is contingent upon the completion of all terms of this Stipulation and the Settlement contemplated hereby becoming Final. If the Stipulation and Settlement does not, for any reason, gain final approval and become effective, Settling Defendants reserve the right to assert all of their objections and defenses to certification of any class, and Plaintiffs will not offer Settling Defendants' conditional stipulation to certification of a Settlement Class as any evidence in support of a motion to certify any class.

**M.      NO ADMISSIONS**

1.      Except as set forth in Paragraph M.2 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussions, negotiations, proceedings, or agreements relating to the Stipulation, the Settlement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Settling Parties for any purpose other than in an action to enforce the terms hereof, and in particular:

a.      do not constitute, and shall not be offered or received against or to the prejudice of Settling Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Settling Defendants with respect to the truth of any

allegation by Plaintiffs and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Class Action or in any litigation, including but not limited to the Settled Claims, or of any liability, damages, negligence, fault or wrongdoing of Settling Defendants or any person or entity whatsoever;

        b.    do not constitute, and shall not be offered or received against or to the prejudice of Settling Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Settling Defendants, or against or to the prejudice of Plaintiffs or any other members of the Settlement Class as evidence of any infirmity in the claims of Plaintiff or the other members of the Settlement Class;

        c.    do not constitute, and shall not be offered or received against or to the prejudice of Settling Defendants or against Plaintiffs or any other members of the Settlement Class, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Settling Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

        d.    do not constitute, and shall not be construed against Settling Defendants, Plaintiffs, or any other members of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

        e.    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or any other members of the Settlement

Class that any of their claims are without merit or infirm or that damages recoverable under the TAC would not have exceeded the Settlement Amount.

2.      Defendants may file this Stipulation and/or the Judgment or Alternative Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policies. The Settling Parties may file this Stipulation and/or the Judgment or Alternative Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Judgment or Alternative Judgment. All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

### N.      MISCELLANEOUS PROVISIONS

1.      The Settling Parties: (a) acknowledge that it is their intent to consummate the Settlement contemplated by this Stipulation; (b) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Stipulation; and (c) agree to exercise their best efforts and to act in good faith to accomplish the foregoing terms and conditions of the Stipulation.

2.      The Settling Parties acknowledge and warrant as follows:

a.      By executing this Stipulation, each of the Settling Parties represents that they have carefully read and fully understand this Stipulation and its final and binding effect;

b.      By executing this Stipulation, each of the Settling Parties represents that they have the right, legal capacity, power and authority to enter into this Stipulation and to perform their obligations hereunder, without the consent, approval, or authorization of any Person;

c.     By executing this Stipulation, each of the Settling Parties represents that the execution and delivery of this Stipulation and the performance of each and every obligation in this Stipulation do not and will not result in a breach of or constitute a default under, or require any consent under, any duty, relationship, contract, agreement, covenant, promise, guarantee, obligation or instrument to which the executing Settling Party is a party or by which the executing Settling Party is bound or affected.

d.     By executing this Stipulation, each of the Settling Parties represents that there is no demand for monetary, non-monetary, or injunctive relief, or any civil, criminal, administrative, or arbitration proceeding for monetary, non-monetary, or injunctive relief known or suspected to exist against them that would affect this Stipulation or their ability to enter into, execute or perform each and every obligation in this Stipulation.

e.     By executing this Stipulation, each of the Settling Parties represents that no representations or promises of any kind or character have been made by any other Settling Party, Released Party, or anyone else to induce the execution of this Stipulation except as expressly provided herein.

f.     By executing this Stipulation, each of the Settling Parties represents that this Stipulation is fair and is executed voluntarily, with full knowledge of the consequences and implications of the obligations contained herein.

g.     By executing this Stipulation, each of the Settling Parties represents that this Stipulation is not the result of any fraud, duress, or undue influence, and that they have not assigned, transferred, or conveyed or purported to assign, transfer, or convey, voluntarily, involuntarily or by operation of law, any or all of their respective rights and claims.

h.      By executing this Stipulation, each of the Settling Parties represents that they have had the opportunity to be represented by counsel of their choice throughout the negotiations which preceded the execution of this Stipulation and in connection with the preparation and execution of this Stipulation.

i.      By executing this Stipulation, each of the Settling Parties represents that they have been afforded sufficient time and opportunity to review this Stipulation with advisors and counsel of their choice.

3.      All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

4.      No amendment or modification of this Stipulation or the Supplemental Agreement shall be effective unless in writing and signed by the Settling Parties or their successors-in-interest.

5.      This Stipulation, the Supplemental Agreement, and the exhibits attached hereto, constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Settling Party concerning this Stipulation, its exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

6.      Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, joint defense or common interest privilege, or work product protection.

7.      Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

8.      All designations and agreements made, or orders entered during the course of the Class Action relating to the confidentiality of documents or information, shall survive this Stipulation.

9.      Except as otherwise provided herein, each Settling Party shall bear its own costs. Lead Counsel's Attorneys' Fees and Expenses, subject to Court approval, shall be paid only out of the Gross Settlement Fund, and the Released Parties shall have no obligation with respect to the payment of said Attorneys' Fees and Expenses.

10.     Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and is also expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class.

11.     The persons signing this Stipulation represent that they are authorized to do so on behalf of their respective clients.

12.     This Stipulation may be executed in one or more original, photocopied, or facsimile counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. The Settling Parties shall exchange among themselves original signed counterparts of this Stipulation, and a complete set of executed counterparts of this Stipulation shall be filed with the Court.

13.     This Stipulation shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs, and legal representatives of the Settling Parties. No assignment shall relieve any party hereto of any obligations hereunder.

14.     All terms of this Stipulation and all exhibits hereto shall be governed and interpreted according to the laws of the State of New York without regard to its rules of conflicts

of law, except to the extent that federal law requires that federal law governs, and in accordance with the laws of the United States.

15.     If any disputes arise out of the finalization of the Settlement documentation or the Settlement itself prior to joint submission to the Court of the application for preliminary approval of the Settlement, those disputes will be resolved by Mediators first by way of expedited telephonic mediation and, if unsuccessful, then by way of final, binding, non-appealable resolution.

16.     Plaintiffs, on behalf of themselves and each member of the Settlement Class, and Settling Defendants hereby irrevocably submit to the jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Stipulation, the applicability of this Stipulation, or the enforcement of this Stipulation. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of Attorneys' Fees and Expenses to Lead Counsel, Awards to Plaintiffs, and enforcing the terms of this Stipulation.

17.     None of the Settling Parties shall be considered to be the drafter of this Stipulation or any provision hereof for purposes of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof. Arm's-length negotiations preceded the execution of this Stipulation, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

18.     Neither this Stipulation, nor the fact of the Settlement, is an admission or concession by any Settling Party of any liability or wrongdoing whatsoever. This Stipulation shall not constitute a finding of the validity or invalidity of any claims in the Class Action or of any wrongdoing by any Defendant named therein. This Stipulation, the fact of settlement, the

settlement proceedings, the settlement negotiations, and any related documents, shall not be used or construed as an admission of any fault, liability, or wrongdoing by any person or entity.

19.     The Settling Parties intend the Settlement to be a final and complete resolution of all claims and disputes asserted or that could be asserted by the Settlement Class Members against the Released Parties. Accordingly, unless the Court's Order and Final Judgment approving the Settlement does not become Final, the Settling Parties agree not to assert in any forum that the Class Action was brought by Plaintiffs or defended by the Settling Defendants in bad faith or without a reasonable basis. Additionally, the Settling Parties shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Class Action. The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

20.     The headings in this Stipulation are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Stipulation in any way.

21.     The waiver of one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other breach of this Stipulation. The provisions of this Stipulation may not be waived except by a writing signed by the affected Settling Party or counsel for that Settling Party. No failure or delay on the part of any Settling Party in exercising any right, remedy, power, or privilege under this Stipulation shall operate as a waiver thereof or of any other right, remedy, power, or privilege of such Settling Party under this Stipulation; nor shall any single or partial exercise of any right, remedy, power, or privilege under this Stipulation on the part of any Settling Party operate as a waiver thereof or of any other right, remedy, power,

or privilege of such Settling Party under this Stipulation, or preclude further exercise thereof or the exercise of any other right, remedy, power, or privilege.

22.     The Settling Parties agree that nothing contained in this Stipulation shall cause any Settling Party to be the agent or legal representative of another Settling Party for any purpose whatsoever, nor shall this Stipulation be deemed to create any form of business organization between the Settling Parties, nor is any Settling Party granted any right or authority to assume or create any obligation or responsibility on behalf of any other Settling Party, nor shall any Settling Party be in any way liable for any debt of another Settling Party as a result of this Stipulation.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated: July 26, 2017

**THE ROSEN LAW FIRM, P.A.**

By: _Gonen Haklay_
Jacob A. Goldberg (*pro hac vice*)
Gonen Haklay (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19025
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

***Lead Counsel for Lead Plaintiff,
Named Plaintiffs, and the Class***

48

GUSRAE KAPLAN NUSBAUM PLLC

By:

Martin H. Kaplan
120 Wall Street, 25th Floor
New York, New York 10005
Tel: (212) 269-1400
Fax: (212) 809-4147
Email: mkaplan@gusraekaplan.com

*Attorneys for Defendants ForceField Energy,
Inc., David Natan, and Jason Williams*


**DICKINSON WRIGHT PLLC**

By:

Jacob S. Frenkel (*pro hac vice*)
1825 Eye Street, Suite 900
Washington, C.C. 20006
Phone: (202) 466-5953
Fax: (202) 659-1559
jfrenkel@dickinson-wright.com

*Counsel for the DTG Defendants*


**HEYMAN LAW FIRM**

By:

William S. Heyman (*pro hac vice*)
201 N. Charles Street, Suite 1100
Baltimore, MD 21201
Phone: 410-762-0140
wheyman@heymanfirm.com

*Counsel for the GSCR Defendants*

GUSRAE KAPLAN NUSBAUM PLLC

By:_____
Martin H. Kaplan
120 Wall Street, 25th Floor
New York, New York 10005
Tel: (212) 269-1400
Fax: (212) 809-4147
Email: mkaplan@gusraekaplan.com

*Attorneys for Defendants ForceField Energy,*
*Inc., David Natan, and Jason Williams*

DICKINSON WRIGHT PLLC

By:_____
Jacob S. Frenkel (*pro hac vice*)
1825 Eye Street, Suite 900
Washington, C.C. 20006
Phone: (202) 466-5953
Fax: (202) 659-1559
jfrenkel@dickinson-wright.com

*Counsel for the DTG Defendants*

HEYMAN LAW FIRM

By:_____
William S. Heyman (*pro hac vice*)
201 N. Charles Street, Suite 1100
Baltimore, MD 21201
Phone: 410-762-0140
wheyman@heymanfirm.com

*Counsel for the GSCR Defendants*

**GUSRAE KAPLAN NUSBAUM PLLC**

By:_____
Martin H. Kaplan
120 Wall Street, 25th Floor
New York, New York 10005
Tel: (212) 269-1400
Fax: (212) 809-4147
Email: mkaplan@gusraekaplan.com

*Attorneys for Defendants ForceField Energy,*
*Inc., David Natan, and Jason Williams*


**DICKINSON WRIGHT PLLC**

By:_____
Jacob S. Frenkel (*pro hac vice*)
1825 Eye Street, Suite 900
Washington, C.C. 20006
Phone: (202) 466-5953
Fax: (202) 659-1559
jfrenkel@dickinson-wright.com

*Counsel for the DTG Defendants*


**HEYMAN LAW FIRM**

By:_____
William S. Heyman (*pro hac vice*)
201 N. Charles Street, Suite 1100
Baltimore, MD 21201
Phone: 410-762-0140
wheyman@heymanfirm.com

*Counsel for the GSCR Defendants*